**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTER DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEHIEL AUTRY, a minor, by and through his parent and natural guardian PURNELL AUTRY** | : : : | **CIVIL ACTION** **No. 15-6565** |
| **Plaintiff,** | : | |
| **v.** | : : | |
| **CITY OF PHILADELPHIA, et al.** | : : | |
| **Defendants.** | | |

**ORDER**

**AND NOW,** this ____________ day of ______________, 2025, upon consideration of the Motion for Summary Judgment of Defendants City of Philadelphia, Charles H. Ramsey, and Timothy Murphy's, and the Motion of Summary Judgement of Defendant Jason Reid, and the combined/joint Response in opposition thereto of the Plaintiff, Jehiel Autry and after a hearing thereon, it is hereby ORDERED and DECREED that the Defendant's Motion for Summary Judgment is DENIED.

BY THE COURT:

_______________________
**MURPHY, J**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEHIEL AUTRY,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **CIVIL ACTION** |
| | : | **No. 15-6565** |
| **CITTY OF PHILADELPHIA, et al.** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**PLAINTIFF JEHIEL AUTRY'S, COMBINED/JOINT RESPONSE IN OPPOSITION TO THE SUMMARY JUDGMENT MOTION OF DEFENDANTS, CITY OF PHILADELPHIA, CHARLES H. RAMSEY, AND TIMOTHY MURPHY**

Plaintiff, Jehiel Autry, by and through its undersigned counsel, hereby responds in opposition to the Defendants City of Philadelphia, Charles H. Ramsey, and Timothy Murphy's Motion for Summary Judgment and respectfully requests the Honorable Court deny the motion on grounds the Defendant's legal basis for summary judgment is not legally meritorious, the Defendant's motion for summary judgment is premature as there are genuine issues of material fact as to the negligence of the Defendant City of Philadelphia, Negligence of Defendant Reid and Murphy, Negligent failure to train and supervise of Defendant City and Ramsey in their negligent training and supervision, and that but-for said negligence the injuries sustained by Plaintiff would not have occurred.

Respectfully submitted,

**VAN DER VEEN, HARTSHORN, LEVIN & LINDHEIM**

**BY:*/s/ David C. Devine*______________________**
**David C. Devine, Esquire**
**Michael T. van der Veen, Esquire**
***Attorneys for Plaintiff***

Date: July 31, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEHIEL AUTRY,** | **:** | |
| **Plaintiff,** | **:** | |
| **v.** | **:** | **CIVIL ACTION** |
| | **:** | **No. 15-6565** |
| **CITTY OF PHILADELPHIA, et al.** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |
| | **:** | |

**MEMORANDUM OF LAWPLAINTIFF JEHIEL AUTRY'S, RESPONSE IN OPPOSITION TO THE SUMMARY JUDGMENT MOTION OF DEFENDANTS, CITY OF PHILADELPHIA, CHARLES H. RAMSEY, AND TIMOTHY MURPHY**

## I. ARGUMENT

Summary Judgment would be inappropriate as the record indicates clear issues of material facts. Plaintiff has pleaded every element of his claim against Defendant and despite Defendant's assertions, genuine issues of material facts on which a reasonable jury could find for the Plaintiff do exist.

Summary Judgment is not appropriate here because the record materially differs as to the facts surrounding when / where / if, flight occurred as well as when / where / if pursuit occurred.

The key issue in this case is the amount of time that Defendant Reid had to react and the environment that existed prior to the accident. Defendant's prayer is that the court will implement an 'intent to harm' standard which will shield the defendant from liability. This standard, however, is the most rigorous standard employed by our court's and only arises within "hyperpressurized" environments. Sauers v. Borough of Nesquehoning, 905 F.3d 711, 717 (3d Cir. 2018). Plaintiff believes that Defendant Reid did possess an 'intention to cause harm' but even if the court does

not agree, there remains two other theories in which a jury could find for Plaintiff that Defendants in their Motion failed to address.

Plaintiff, in his following response to Defendants City of Philadelphia, Charles H. Ramsey, and Timothy Murphy's Motion for Summary Judgment, will respond to the Defendants' claims with case law and facts from the record as well as urge the court to deny said motion.

**Sauers Analysis of the Facts of Contained Within the Record**

| | **Hyperpressurized** | **Hurried Deliberation** | **Unhurried Judgments** |
|---|---|---|---|
| **Officer Reid Deposition** | | **** "Approximately ten seconds later, he's still staring at me in this – in the mirror." (See deposition of Officer Reid at P 62)**<br><br>**** "He then makes a hard left out of the line of traffic, goes past one or two vehicles. . . Goes completely through that stop sign and now is heading north at a high rate of speed." <u>Id.</u>**<br><br>**** "He now is proceeding at a very high rate of speed. He goes around traffic, goes through that stop sign, and is now proceeding still northbound at a very high rate of speed." <u>Id.</u>**<br><br>**** "I now come out of the traffic I'm in, and I start to follow a vehicle. He's already go a significant jump on me." <u>Id.</u> at 63.**<br><br>****"I'm following him." <u>Id.</u>** | ****"I can't tell how many occupants are in the car. The front window is down. There – there's a lot of traffic (See Deposition of Office Reid P 61)**<br><br>**** "As I look in the driver's side mirror of the car, I see a male, which I obviously recognize. I know him." <u>Id.</u>** |

| | | | |
|---|---|---|---|
| | | ** "We had the tag, I believe… I tell him to run the tag, but I don't have the information yet on the tag." Id.<br><br>** "I believe Murphy goes over the air somewhere in this time, telling them we're trying to catch up with this vehicle." Id. at 65<br><br>** "I am now coming up to Germantown Avenue. I once again activate my lights and sirens, and I go through a multiple of different sounds." Id. | |
| **Officer Murphy Dep** | | ** "Q. Did you attempt to catch up to the vehicle so that you could pull it over while it was still on 13th street?<br>A. I believe after the first stop sign, it had – we had already cleared that one and he went down to Glenwood and made the other one so we – it wouldn't have made it possible to catch him there because it – everything was moving, you know, kind of quick." Id.<br><br>"A. I notified radio that we had a vehicle and to us that it appeared to be taking off on us when we were trying to stop it." Id. at 49. | ** "Q. When you noticed the Equinox go through the stop sign on 13th, did you consider that to be a traffic violation? . . .<br>A. Yes.<br>Q. And at that point in time, is that when your vehicle started to follow the Equinox?<br>A. I believe so, yes." (See Deposition of Officer Murphy at 28)<br><br>** "A. We were not close to the vehicle at that time. We had to pull up closer to it, and we were also following to see if there were any other violations and trying to pick a safe location to initiate the stop." Id. at 28. |

| | | | |
|---|---|---|---|
| | | | ** "Q. When you saw the vehicle disregard the stop sign at 13th and Cambria, did you intend on pulling it over at some point?<br>A. In my mind, yes. As to what Officer Reid was thinking if we were pulling it over right then and there or around the corner, I could not tell you." Id.<br><br>** "Q. To you, did the vehicle appear as if it were trying to elude you?<br>A . I don't recall." Id.<br><br>** "Q. Was it swerving on 13th Street?<br>A . Not that I remember." Id. |
| **Jehiel Autry Deposition** | | ** "Q. So you pulled off and you said you were on 12th and Cambria?<br>A . We were on 13th and Williams before we pulled off and we turned onto 12th Street." (See Deposition of Jehiel Autry P 20)<br><br>** "Where did you go next?<br>A . We were parked on 12th and Cambria, and then we turned right again.<br>Q. On What?<br>A. I'm not sure.<br>Q. What happened next?<br>A. We turned back on William Street, and the police officers were behind our car now and turned there lights on." Id. at 21-22 | ** "Q. So you pulled off any you said you were on 12th and Cambria?<br>A . We were on 13th and Williams before we pulled off and we turned onto 12th street.<br>Q. Did you turn north or south on 12th Street?<br>A. We made a right. I'm not sure whether that was north or south.<br>Q. What happened next?<br>A. We turned back on Williams Street, and the police officers were behind our car now and turned there lights |

| | | | |
|---|---|---|---|
| | | **"Q. You were traveling on 12 to 13th street on Williams?<br>A . Yes.<br>Q. And you saw police officers?<br>A. Yes.<br>Q. When did you first see those police officers?<br>A. On 12th and Cambria." Id.<br><br>** "A. We were going down Glenwood in pursuit and probably it felt like it was a long time, but after that we crashed." | on." (See Deposition of Jehiel Autry P 20-21)<br><br>"Q. Did they follow you for a time period before they put their lights on?<br>A . No. As soon as we turned onto - - I'm not sure, but when they were on 12th and Cambria. We turned. And that is when they started riding behind us." Id. at 22. |

| | Intent To Cause Harm | Conscious Disregard of a Great Risk of Serious Harm | Done With Deliberate Indifference |
|---|---|---|---|
| Officer Reid Deposition | | ** "I know he's young. He is underage." (See Deposition of Officer Reid P 62).<br><br>**"I'm following him." Id. at 63.<br><br>"As we head eastbound on Glenwood, we come to a stoplight at 12th and Glenwood. Without brake, without hesitation of any kind, this vehicle goes through that stop sign, just straight through it. Id.<br><br>** "There are cars stopping. There are cars – that's a one-lane highway. There are cars stopping, sliding out. He's going around traffic the entire time. He's in the wrong lane." Id. at 64. | |

| | | | |
|---|---|---|---|
| | | ** "I cannot proceed in the same manner as that vehicle is. So I activate my lights. I activate my siren. I clear the intersection, and I start off after this vehicle." Id.<br><br>** "This is a residential area. The speed limit in a residential area in Philadelphia is – anytime or anywhere from 15 to 25 miles an hour. This vehicle is doing 80, easy." Id. at 64-65.<br><br>** "I believe Murphy goes over the air somewhere in this time, telling them we're trying to catch up with this vehicle." Id. at 65 | |
| **Officer Murphy Deposition** | | () There is conflicting testimony -- Officer Reid stated that the reason the police car's lights were engaged was in order to clear the intersection, however there is no mention of this in Officer Murphy's deposition which seems to imply the lights and sirens were engaged for the purpose of a pursuit.<br><br>** "Q . When you see the vehicle, the Equinox, make its wide right onto Glenwood, do you recall where on 13th your vehicle was located?<br>A . Not too far before the – the turn onto Glenwood. I can't recall exactly how far we were."<br><br>** " Q. Where is your vehicle when you see the Equinox | ** "Q. So based upon what you saw the Equinox doing when you were following the vehicle – and when I say what the Equinox was doing, when it disregarded that stop sign – at 13th and Cambria and was proceeding towards Glenwood, did you think that there was justification for a vehicular pursuit at that time?<br>A. No, but we were also not in pursuit of the vehicle at that time." Id. at 30-31.<br><br>** "Q. Okay. But I'm saying if you were to have engaged in a vehicular pursuit at |

| | | | |
|---|---|---|---|
| | | **Disregard the red signal at 12th?<br>A . I don't recall how far back we were. Probably about Camac Street, if I had to venture a guess." Id. at 40.<br><br>"We were trying to catch up to it to pull it over." Id. at 50.** | **that time, was there justification for one?<br>A To my – to my knowledge, no." Id.<br><br>** "Q. Before the vehicle reaches Glenwood, am I correct that the only traffic violation that it had committed was running through the stop sign?<br>A. As far as I know, yes, the one stop sign at that point before it reached there." Id.** |
| **Jehiel Autry Deposition (2015)** | | | |

Summary Judgment would be inappropriate as the record indicates clear issues of material facts. Plaintiff has pleaded every element of his claim against Defendants and despite Defendants assertions, genuine issues of material facts on which a reasonable jury could find for the Plaintiff do exist. The key issue in this case is the amount of time that the Police officers had to react and the environment that existed prior to the accident. Defendants' prayer is that the court will implement an 'intent to harm' standard in order to hold the City and its Agents liable. This standard is the most rigorous standard employed by our court's and only arises within "hyperpressurized" environments. Sauers v. Borough of Nesquehoning, 905 F.3d 711, 717 (3d Cir. 2018). Plaintiff believes that the officers involved in this accident possessed an 'intention to cause harm' but even if the court does not agree, there remains two other theory's in which a jury could find for Plaintiff,

that is, Defendants' conduct shocks the conscience pursuant to a state created danger theory. Defendants do not address these theories of recovery in their motion.

Plaintiff, in his following response to Defendants City of Philadelphia, Charles H. Ramsey, and Timothy Murphy's Motion for Summary Judgment, will respond to the Defendants' claims with case law and facts from the record as well as urge the court to deny said motion.

**A. Plaintiff Purnell Autry Does Have a Basis to Proceed for Jehiel Autry and Therefore Summary Judgment Is Inappropriate**

Plaintiff reiterates here the argument set forth in his Response in Opposition to the Motion of Defendant, The City of Philadelphia, to Dismiss Plaintiff-Father Purnell Autry From the Plaintiff's Amended Complaint.

The Plaintiff, Jehiel Autry, was a minor when he suffered the injuries for which claim and compensation is sought in this case. Until Jehiel Autry reached his age of majority, he was not liable for or obligated to pay his medical expenses related to the at-issue injuries from the crash that forms, the locus of the instant action for damages. However, Plaintiff's father, Purnell Autry, was responsible at all times for and obligated to pay for Jehiel Autry's medical expenses incurred while in his minority. In the instant action, Jehiel Autry suffered the injuries at issue in this matter during his in his minority. Therefore the Motion of Defendant, City of Philadelphia, to remove Purnell Autry from the caption should be denied. Alternatively the complaint should be amended to raise a separate cause of action for reimbursement to Purnell Autry for the natural and reasonable expenses and losses he incurred, in the aftermath of the crash at issue in this case.

Pennsylvania courts have observed that "[a] cause of action is property[.]" Tri-State Asphalt Corp. v. Dep't of Transp., 875 A.2d 1199, 1202 (Pa.Cmwlth. 2005) (citing Fejerdy v.

 Fejerdy, 293 Pa.Super. 138, 437 A.2d 1244 (1981)). In situations when a minor is injured, two distinct causes of action arise, "one the parents' claim for medical expenses and loss of the minor's services during minority, the other the minor's claim for pain and suffering and for losses after minority." Hathi v. Krewstown Park Apartments, 385 Pa.Super. 613, 561 A.2d 1261, 1262 (1989).

A parent obviously may pursue his or her own cause of action in tort in connection with the child's injury, subject to a two-year statute of limitations. *See* 42 Pa.C.S. § 5524(2). However, "children have a distinct legal disability, as they are prohibited from personally bringing a cause of action before reaching the age of majority." Nicole B. v. Sch. Dist. of Philadelphia, 661 Pa. 638, 237 A.3d 986, 993 (2020). Accordingly, "to safeguard certain minors' rights during their period of legal disability," 42 Pa.C.S. § 5533 "exempt[s] children from the operation of statutes of limitations during their period of legal disability, and enabl[es] them to bring a civil action on their own behalf upon reaching the age of majority." Id.

Additionally, a parent "has the natural and primary right to bring an action, as guardian, on behalf of his or her child," Dengler by Dengler v. Crisman, 358 Pa.Super. 158, 516 A.2d 1231, 1234 (1986). Nonetheless, "[a] minor's representation is subject to the trial court's control and supervision, and it has the right in each case to determine whether the litigation is in the minor's best interests." Rehrer, supra at 193. Furthermore, "[n]o action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor." Pa.R.C.P. 2039(a).

In this case the Plaintiffs, both in the Complaint and in their Amended Complaint, make a claim for the medical expenses and financial expenses and related cognizable losses incurred while the then minor, Jeheil Autry, had not reached his majority (See e.g., Amended Complaint

Case 2:15-cv-06565-JFM Document 54 Filed 05/22/25 Page 2 of 3 at paragraphs 91 and 94). Those expenses relate to the Plaintiff-Father's obligations for the financial and medical expense support of the then minor, Jeheil Autry, who had not reached his age of majority, as well as cognizable losses that occurred as of the time of the chase and crash that form the locus of the theories of recovery against the Defendants in this matter. Therefore the Plaintffs' Pleadings plainly make out claims for cognizable losses for Plaintiff Father would be obligated as the natural parent and legal guardian of Jeheil Autry.

Therefore, in consideration of Twombly, that is, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) under which a pleading must be considered in its entirety; the claims presented need not be alleged with particularity, but there must be sufficient factual averments that place the defendants on notice of the bases for the claims; and plaintiff's entitlement to relief on the bases for the claim presented against a particular defendant must be plausible.

With Twombly's principles in mind, as well as the procedural history in this matter and vindicable claims both during the minority and majority of Jeheil Autry, the Defendant's Motion to Dismiss should be denied. Alternatively, the Plaintiffs should be granted leave to file a second amended complaint to aver all the theories of recovery and causes of action for which they are entitled pursuant to under Pennsylvania law.

Summary judgment is not appropriate in this matter because the record materially differs as to pertinent facts surrounding the critical issues of when and where flight commenced, as well as when, where, and if pursuit occurred, depending on which version of events is credited as testified to the various involved parties.

**B. Because this case did not involve a "Hyperpressurized" environment, there exist no "intent to harm" requirement and therefore Summary Judgment should be denied. There is Proof contained within in the Record that Defendants did possess an Intent-to-Harm and Therefore Summary Judgment Upon Plaintiff's Fourteenth Amendment Claim should be denied.**

"The level of culpability required to shock the contemporary conscience falls along a spectrum dictated by the circumstances of each case." Sauers, 905 F.3d at 716 citing County of Sacramento v. Lewis, 523 U.S. 833, 847-49 & n.8, 118 S.Ct. 1708,140 L.Ed.2d 1043 (1998). "Our case law establishes three distinct categories of culpability depending on how much time a police officer has to make decision. Id. citing Haberle, 885 F.3d at 177. "In one category are actions taken in a 'hyperpressurized' environment. Id. They will not be held to shock the conscience unless the officer has 'an intent to cause harm'" Id. (citation omitted). "Next are actions taken within a time frame that allows an officer to engage in 'hurried deliberation.'" Id. "When those actions 'reveal a conscious disregard of a great risk of serious harm' they will be sufficient to shock the conscience." Id. "Finally, actions undertaken with 'unhurried judgments,' with time for 'careful deliberation,' will be held to shock the conscience if they are 'done with deliberate indifference.'" Id.

Examining the facts from the record the court utilized in Sauers will be a useful exercise in understanding our current case. In Sauers the court concluded that that the Police Officer "had at least some time to deliberate before deciding whether and how to pursue the traffic offender." Id. In support of this conclusion the Sauers Court remarked that at

> "some point, [the Officer] had time to call the neighboring police department as he was contemplating his actions. It is further supported by an obvious inference from the nature

of the Dodge driver's mild provocation: there was no emergency arising from a simple traffic violation. The liability question thus becomes whether deciding to pursue a potential summary traffic offender at speed of over 100 miles-per-hour, after radioing for assistance from the neighboring jurisdiction where the potential offender was headed, demonstrates a conscious disregard of a great risk of serious harm. We have no difficulty in concluding that it does." Id.

In our case, the officers who pursued Plaintiff's vehicle had significant time to consider the actions they were taking. Before officer Reid ever initiated any attempted stop or pursuit, he testified he recognized the driver and understood that he was young and underage. **See Deposition of Officer Reid.** Officer Reid testified a moving violation precipitated his intention to stop Plaintiff's driver. From this intent to stop for a moving violation, the Plaintiff-passenger, suffered the injuries from the escalation into a pursuit along Glennwood Rd across Germantown Avenue and Allegheny Avenue after which the pursuit ended with the collision and rollover of the vehicle Plaintiff was riding as a passenger. Officer was operating a highly modified show police SUV with a pursuit package engine and suspension. The Plaintiff was a passenger in a late model (2005) Chevy Equinox. Officers Reid and Murphy were highly experienced, and the Plaintiff's driver was a 16 y.o. who would not have the same driving skill and ability and certainly completely outmatchd motor vehicle speed and capability. Thus reasonable jurors could reject the testimony of Officers Reid and Murphy.

"If a city employee violates another's constitutional rights, the city may be liable if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation. In particular, [if] the inadequate training of police officers could be characterized as the cause of the constitutional tort if—and only if—the failure to train amounted to 'deliberate

indifference' to the rights of persons with whom the police come into contact." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 124, 112 S. Ct. 1061, 1068, 117 L. Ed. 2d 261 (1992).

In Collins, petitioner's complaint failed because it did "not charge the city with a willful violation of Collins' rights. Petitioner [did] not claim that the city or any of its agents deliberately harmed her husband. In fact, [petitioner did] not even allege that his supervisor instructed him to go into the sewer when the supervisor knew or should have known that there was a significant risk that he would be injured." Id. At 1069.

In our current case Plaintiff has clearly and plainly set forth the ways in which Defendants willfully violated Plaintiff's constitutionally protected rights. In their Complaint, Plaintiff states that "Defendants expressed a deliberate indifference by failure to properly train, adequately supervise and enforce the Directives with the effect of law; Defendants' training and/or supervision was known to be inadequate and failed to properly prepare Defendant Police Officers." ***See* Plaintiff's Complaint attached hereto as exhibit A.** Furthermore, Plaintiff's Complaint explains how the implementation and execution of the motor vehicle pursuit policy was a direct cause of the accident by stating that "[t]he harm caused by Defendant Police Officers Reid and Murphy was a foreseeable and a direct result of Defendants City of Philadelphia and Defendant Charles H. Ramsey's failure to create a motor vehicle pursuit policy, failure to provide adequate training and/or failing to properly supervise its officers with regard to said policies and directives, specifically Directive 41." ***See* Plaintiff's Complaint attached hereto as Exhibit A.**

Plaintiff's Police expert further supports this theory in his report by explaining that "[g]iven its outdated pursuit policy and the actions of Reid and Murphy in this matter, it is unlikely PPD routinely conducts exhaustive analysis of pursuit data. When reports are not compiled in conformity to policy, as was the case here, officers cannot be held accountable and it shows a lack

of supervision, training and willingness to address potentially systemic police practices with significant public safety implications." ***See*** **Plaintiff's Expert Report attached hereto..**

During discovery it was further revealed how Defendants blatantly ignored the safety procedures put in place to protect individual's constitutional rights. Pursuant to 75 Pa. Cons. Stat § 6342, the Philadelphia Police Department was directed to consider the following factors in creating a policy and procedure regarding vehicle pursuits.

a. The potential for harm or immediate or potential danger to others if the fleeing individual or individuals escapes.
b. The seriousness of the offense committed or believed to have been committed by the individual or individuals attempting to flee; and
c. Safety factors that pose a risk to police officers, other motorists, pedestrians and other persons.

Accordingly, it should be considered 'conscience shocking' that in his Deposition, Officer Timothy Murphy did not even know what Directive 41 was. ***See*** **Deposition of Officer Murphy attached hereto as Exhibit C.**

Directive 41 of the Philadelphia Police Procedures clearly outlines the situations in which vehicle pursuits are permitted, and testimony during depositions provides evidence that these directives were ignored, neglected and improperly enforced. Because the function of these policies is safety, a propensity to ignore them by the marked car officers, their supervisors and the city indicates that an 'Intent-to-harm' is clearly present.

Reasonable jurors could differ in ruling out an intent to harm under the circumstances where evidence of this included in the Deposition of Officer Joseph Conard explicitly contradicts Defendant Officer Murphy's assertion that the lead up to the accident was not a "pursuit" which was prohibited by Directive 41 of the Philadelphia Police Department. In his Deposition, Officer Joseph Conard was asked: "You heard Officer Murphy say that he believed it was not a pursuit.

Do you disagree with that?" Officer Joseph Conard then responded "Yes." ***See* Deposition of Officer Joseph Conard Page 12.**

Defendants in their Motion claim that Plaintiff's Fourteenth Amendment claim should be barred because the chase was "for a legitimate government purpose, rather than to harm." ***See* Defendants City et al. Motion for Summary Judgment.** The record indicates however that pursuing a vehicle for the type of traffic violation which allegedly occurred is prohibited by Directive 41, which is intended to keep both the public, the officers and the suspects safe. Defendant's argument, that the purpose of the pursuit "was not to harm," should be disregarded since the pursuits purpose ignored the Directive's safety objectives. Further, Officer Reid testified that his experience with traffic stops had lead him to recover over "100" (illegal) firearms. See N.T. Officer Reid p. 54, ln.23. See also, N.T. Officer Reid, p.55, ln 19, "you can come up with anything … from the smallest violation of the law". Again, reasonable minds could infer Reid's testimony evinces callousness, maliciousness and wanton as well as a mindset intending to harm in circumstances where he perceives he may be likely get lucky, that is, he seeks high risk/reward pretextual circumstances.

There is present here genuine issues of material fact as to whether defendant's actions were for a legitimate government purpose and therefore "not to harm." Philadelphia Police's Directive 41 strictly forbids vehicle pursuits for traffic violations for the very purpose of keeping civilians, officers and suspects safe, and the "reasonableness" standard courts apply to 14th Amendment Constitutional questions puts into question the utility of speedily chasing a car and putting a significant number of people in danger for the purpose of performing a traffic stop on a vehicle for running a stop sign.

Plaintiff, through his Pleadings, has repeatedly demonstrated how each defendant either individually or through their agents and policies were a substantial factor in causing the accident that gave rise to Plaintiff's life altering injuries.

Plaintiff's Pleadings demonstrate real issues of material fact present in this case and Defendants have not met the burden laid out by the Federal Rules of Civil Procedure of dismissing them. According to the F.R.C.P. 56(c)(1):

> "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

The finder of fact could discredit some, all, or none of Officer Reid's testimony, some, all, or none of Officer Murphy's testimony, or some, all or none of Plaintiff Jehiel Autry's testimony.

This is materially significant because if Officer Reid's version is discredited, but Officer Murphy's version is credited, then pursuit did not initiate until the Austin vehicle reached 13th and Glenwood, at which point Officer Reed commenced pursuit Officer Murphy testified. Austin initiated flight at that point. However, significant time had elapsed with various vehicular movements across various streets prior to the point where all three parties agree the path of the pursuit reached 13th and Glenwood. There is further internal contradiction of material facts between Officer Reed and Officer Murphy's testimony as Officer Murphy

testified the only moving violation that occurred before the police vehicle and Austin vehicle reached 13th and Glenwood happened back at 12th and Cambria. However, Officer Reed testified that there was never any pursuit but he intended to apprehend the Austin vehicle not for moving violation but purportedly because of danger to the community. Again, this is material to determining the scienter to be applied to the legal analysis.

The Plaintiff Jehiel Autry's version indicates the Austin vehicle pulled over because Officer Reid vehicle approached with lights engaged from behind before the Austin vehicle initiated flight.

Clearly, the disparity between officer's testimony directly implicates whether an intent to harm standard is justified in this case due to the pretextual emergency as testified to by officer Reed or whether a confidentiality, Disregard of a great risk of serious harm standard is applied under less hurried facts prior to any pursuit. *See* Sauers, supra, See also Otero v. Kane, No. 22-4141, 2024 WL 4173777, at *9 (E.D. Pa. Sept. 12, 2024).

**C. The Individual Defendants Are Not Entitled to Qualified Immunity and Summary Judgment Should Not Be Entered.**

Defendants are not entitled to qualified immunity because the facts alleged show the officer's conduct violated Plaintiff's constitutional right. "When confronted with a claim of qualified immunity, a court must ask first the following question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Brosseau v. Haugen, 543 U.S. 194, 197, 125 S. Ct. 596, 598, 160 L. Ed. 2d 583 (2004) quoting Saucier v. Katz, 533 U.S.., at 201, 121 S.Ct. 215. If "the court finds a violation of a constitutional right, the next sequential step is to ask whether the right was clearly established … in light of the specific context of the case." Scott v. Harris, 550 U.S. 372, 374, 127 S. Ct. 1769, 1772, 167 L. Ed. 2d 686 (2007).

In Scott v. Harris, the Supreme Court was presented with the question: "Can an officer take actions that place a fleeing motorist at risk of serious injury or death in order to sop the motorist's flight from endangering the lives of innocent bystanders?" Id. at 374. The Scott court explained that the "first step in assessing the constitutionality of Scott's action is to determine the relevant facts. As this case was decided on summary judgement, there have not yet been factual findings by a judge or jury, and respondent's version of events (unsurprisingly) differs substantially from Scott's version. When things are in such a posture, courts are required to view the facts and draw reasonable inferences to the party opposing the [summary judgment] motion. In qualified immunity cases, this usually means adopting the plaintiff's version of the facts." Id. at 378.

The facts here as Plaintiff previously included in his complaint, are that Directive 41 of the Philadelphia Police Department sets forth the criteria for when a vehicular pursuit can be initiated. The Officers involved in this lawsuit and who were employed by the Philadelphia Police Department knew that the Driver of Plaintiff's Vehicle was "young" and "underage." **See Deposition of Officer Reid.** Defendant City of Philadelphia and Charles H. Ramsey failed to create such a policy and/or train and/or supervise its officers with regard to said policies and directives. Furthermore it was the duty of Defendant City and Defendant Ramsey to properly train, supervise and otherwise enforce the police directives. Defendants expressed a deliberate indifference by failure to properly train, adequately supervise and enforce the Directives with the effect of law; Defendant's training and/or supervision was known to be inadequate and failed to properly prepare Defendant Police Officers.

Defendants in their Motion cite District of Columbia v. Wesby as evidence that the individual officers in this case are entitled to qualified immunity. Wesby reasoned that the officers were entitled to qualified immunity because the officers "reasonably but mistakenly conclude[d] that

probable cause [wa]s present." D.C. v. Wesby, 583 U.S. 48, 65, 138 S. Ct. 577, 591, 199 L. Ed. 2d 453 (2018) citing Anderson v. Creighton, 483 U.S. 635, 640, 641, 107 S. Ct. 3034, 97 L.Ed.2d 523. The conclusions reached in that case, which involved arresting partygoers in a vacant home, cannot be painted onto this one. It was not reasonable for the Police Officers here, who routinely conduct traffic stops to consider it reasonable to start chasing a car who ran a stop sign, through a congested street where an accident was not only foreseeable but likely.

**D. Officer Murphy was so personally involved in tortious conduct individually and jointly with other Defendants, and summary judgment should be Denied on counts IV and V**

Defendant Officer Murphy was one of two officers inside a marked police cruiser who pursued Plaintiff's vehicle causing the accident and Plaintiff's injuries. Although Defendant Murphy was not driving the vehicle, he was still responsible for parts of it's operation. ***See*** **Deposition of Officer Reid.** Defendant Murphy's purpose in conducting a high-speed pursuit was to harm Plaintiff. According to County of Sacramento v. Lewis, a police officer violates the Fourteenth Amendment's substantive due process in a high-speed automobile chase only when they possess a "purpose to cause harm unrelated to the legitimate object of arrest." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 836, 118 S. Ct. 1708, 1711, 140 L. Ed. 2d 1043 (1998). The record indicates that Officer Murphy was under the obligation of a duly sworn Police Officer of Philadelphia, to follow Directive 41 as it pertains to vehicle pursuits in order to preserve safety for all individuals potentially impacted by their danger. The record also indicates that the type of police chase that Defendant Murphy engaged in was of the type prohibited by directive 41. ***See*** **Directive 41 attached hereto.** ***See also*** **Plaintiff's Expert Report.**

Furthermore, Officer Murphy owed a duty to Plaintiff and was a substantial factor in causing Plaintiff's injuries and therefore summary judgment should not be entered in favor of him. "[A]

defendant is not relieved from liability because another concurring cause is also responsible for producing injury." Powell v. Drumheller, 539 Pa. 484, 490, 653 A.2d 619, 622 (1995). "Proximate cause is a term of art, and may be established by evidence that a defendant's negligent act or failure to act was a substantial factor in bringing about the harm inflicted upon a plaintiff. Pennsylvania law has long recognized that this substantial factor need not be … the only factor…." Id. citing Jones v. Monetefiore Hospital, 494 Pa. 410, 416, 431 A.2d 920, 923 (1981).

Evidence of this causal relationship can be found within the record. Plaintiff's expert, in his report states that "Officers Reid and Murphy initiated a vehicle pursuit of the Chevrolet Equinox, in violation of PPD policy and generally accepted police practices[.]" ***See*** **Plaintiff's Expert Report.** Plaintiff's expert is extremely familiar with the types of police chases present in this case, and it is his opinion that "[o]fficers Reid and Murphy did not act reasonable or prudent in their pursuit of  the Chevrolet Equinox for moving violations and crashed soon after they initiated a vehicle pursuit[.]" ***See*** **Plaintiff's Expert Report.**

Even though Officer Murphy was not driving the marked police vehicle leading up to the accident, the record indicates he acted in concert with and supported Officer Reid in carrying out the pursuit, among other things acting as  a "spotter" to facilitate Reids high-speed operation of the police pursuit SUV. Officer Murphy stated in his deposition that he had been familiar with Directive 41 since 1997 and that he spends "the bulk of the time on patrol." Officer Murphy also explains that he is often the driver of Police cruisers and therefore should be familiar with the Directive.

Further evidence of Officer Murphy's intent to harm Plaintiff is included within his deposition transcript, when he details how he did not initiate the police cruisers light's upon beginning to pursue the Plaintiff's vehicle for a traffic violation. Officer Murphy further states in

his deposition that there was no justification for a vehicle pursuit at the time but that he did not engage in one. ***See*** **Deposition of Officer Murphy.** This conflicting account of what occurred is a clear demonstration of a material fact currently in dispute in this case and summary judgment therefore should be denied.

E. **Claims Against Commissioner Ramsey Are Vindicable in His Official Capacity**

Defendant's are incorrect. Plaintiff has filed suit against Defendant Commissioner Ramsey in his individual and official capacity. ***See*** **Plaintiff's Amended Complaint attached hereto.** In Capresecco v. Jenkintown Borough, Defendants argued

> "that a claim against an individual in her official capacity is functionally the same as a claim against the local government entity. Therefore, they argue, the official capacity claims merge with the claims against the local agency, making the official capacity suits against the individuals redundant. This redundancy, Defendants contend[ed], justifie[d] dismissing Plaintiff's official capacity claims." Capresecco v. Jenkintown Borough, 261 F. Supp. 2d 319, 322 (E.D. Pa. 2003).

The court in Capresecco held, that both defendant's

> "must answer charges against them in their individual capacities, and so dismissing the official capacity claims against them will serve no laudable purpose. Defendants do not argue that the allegations against [Defendants] fail to state a cognizable claime under § 1983; rather, they merely contend that such claims are redundant. This is not a persuasive basis for dismissal under Rule 12(b)(6). (A ruel 12(b)(6) motion does not address the redundancy of claims; it questions only their validity. Redundant claims may all be valid." Id. (internal quotations omitted).

**F. Officer Murphy is Statutorily Immune From Any Alleged Decision to Engage in a Pursuit and No other Conduct By Him Can be Construed as Negligent Operation of a Vehicle, so Summary Judgment is Warranted as to Count IV**

Officer Murphy is not Statutorily Immune because his conduct falls within one of the exceptions outline in 42 Pa.C.S.A. § 8542. 42 Pa.C.S.A. § 8542 outlines the exceptions to § 8541 which states that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S.A § 8542 states:

> "(a) liability imposed.—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occus as a result of one of the acts set forth in this subsection (b):
>
> (1) The damages would be recoverable under common law or statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
>
> (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.
>
> (b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

(1) Vehicle liability.—The operation of any motor vehicle in the possession or control of the local agency, provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer. As used in this paragraph, 'motor vehicle' means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air."

The problem with granting Statutory immunity, therefore, would be that it directly contradicts the testimony provided by Officer Murphy in his Deposition where he states that his Police cruiser was not in active pursuit of Plaintiff's vehicle. If the officers were not in active pursuit, it would be difficult to claim immunity because the Plaintiff was fleeting. Again we are faced in this case with crucial questions effecting it's outcome that ultimately make granting Summary Judgment premature.

**G. Sufficient Nexus exist Both Plaintiff's Negligence Claims (Counts III & IV) and Fourteenth Amendment Claims (Counts VI & VII)**

**H. Plaintiff Has Not Adduced Record Evidence to Support His Claim of Municipal Liability Against the City as a Matter of Law, Warranting Dismissal of Counts V & VII**

"[A] state actor can only be held liable if 'a relationship [existed] between the state and the person injured … during which the state places the victim in danger of a foreseeable injury.'" Morse v. Lower Merion School District.

There exists here ample evidence contained within the record showing municipal liability against the City as a matter of law.

1. Plaintiff's Failure to Establish an Underlying Constitutional Violation Necessitates the Dismissal of their Municipal Liability Claim

> "Defining a right at the appropriate level of specificity is often the most crical aspect of a qualified immunity analysis. In undertaking that task, we are guided by the Supreme Court's repeated instructions to do so in light of the particular facts of the case at hand . . . We accordingly define the right at issue here as one not to be injured or killed as a result of a police officer's reckless pursuit of an individual suspected of a summary traffic offense when there is no pending emergency and when the suspect is not actively fleeing police." Otero v. Kane, No. 22-414, 2024 WL 4173777, at *9 (E.D. Pa. Sept. 12, 2024). Quoting Sauers supra.

2. Plaintiff has Adduced No Evidence that PPD Employed an Unconstitutional "Policy" or "Custom"

Plaintiff has attached hereto a Police Expert's Report that contains within it evidence of the Unconstitutional Policy and Custom employed by the Philadelphia Police Department. ***See*** **Plaintiff's Expert Report attached hereto.** Plaintiff has also included in his response to Defendant's Motion for Summary Judgment the various ways in which this policy's and custom's caused Plaintiff to be deprived of his duly owed constitutional rights.

3. There is No Evidence Any custom of Policy Was the Moving Force Behind Plaintiff's Alleged Harms in This Case

Defendants in their Motion for Summary Judgment assert that in order to "demonstrate a direct causal link between the municipal action and the deprivation of federal right

4. The Record reveals facts from deliberate indifference may be adduced

In his deposition, Officer Murphy, when asked whether he was familiar with Directive 41 responded; "Not off the top of my head, no." ***See*** **Deposition of Officer Murphy.** Officer Murphy, a person employed by the City of Philadelphia, who had been a police officer for 18 years at the time his deposition was taken, was not familiar with the Policy governing vehicle pursuits. Defendants wrongly claim that Plaintiff has adduced no evidence that Defendants assert that 'Deliberate indifference' requires that "a municipal actor disregard a known or obvious cause of his action." It follows Defendants claim, that "a plaintiff must prove that a policymaker was deliberately indifferent to harms from an offending policy or custom." The lack of awareness an experienced police officer has for the safety protocols required of him speaks directly to the Plaintiff's assertion that the "policymaker was deliberately indifferent to harms from an offending policy or custom."

Whether defendant City would like to lay blame at the feet of the supervisors tasked with enforcing rule compliance or with the individual officers who ignored the directive, does not change the fact that the city was ultimately responsible for the tragedy that resulted from the policy / customs implementation.

**CONCLUSION:**

Summary judgment is inappropriate as there remain material issues of fact critical to the applicable legal analysis as to the state created danger theory of recover in this matter.

Respectfully submitted,

**VAN DER VEEN, HARTSHORN, LEVIN & LINDHEIM**

**BY:*/s/ David C. Devine*** ____________________

**Michael T. van der Veen, Esquire**
**David C. Devine, Esquire**
***Attorneys for Plaintiff***

Date: July 31, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTER DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEHIEL AUTRY, a minor, by and through his parent and natural guardian PURNELL AUTRY** | : | **CIVIL ACTION** |
| | : | **No. 15-6565** |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | |
| | : | |
| **Defendants.** | | |

## CERTIFICATE OF SERVICE

I, David C. Devine, Esquire, hereby certify that on the 31 day of July, 2025, a true and correct copy of the foregoing Response in Opposition to all Defendants Motion for Summary Judgement, was served upon all counsel via electronic filing with the PACER/ECF system.

Respectfully submitted,

**VAN DER VEEN, HARTSHORN, LEVIN & LINDHEIM**

**BY:*/s/ David C. Devine***
**Michael T. van der Veen, Esquire**
**David C. Devine, Esquire**
***Attorneys for Plaintiff***

DATE: 7/31/25